**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF NEW YORK**
**UTICA DIVISION**

|  |  |
|---|---|
| DARWIN JIMENEZ VEGA, WILMER ORELLANA, DAVID AGUILERA ALVAREZ, ROBINSON AGUILERA RIVAS, OLVAN CRUZ MEJIA, EDWIN GARCIA MOLINA, JECSON GONZALEZ MACHADO, GERMAN HERNANDEZ CASTRO, CLAUDIA ORELLANA GOMEZ, JONATHAN CASTILLO LOPEZ, FRANKLIN LAINEZ ORDONEZ, THE ESTATE OF MELVIN ORELLANA, JOSE LAINEZ, JUNIOR GONZALEZ, and LUIS ORELLANA MARTINEZ<br>Individually, and on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>FOX BUILDING GROUP, INC.,<br><br>FENIX FINISHING, LLC,<br><br>-and-<br><br>VEGA'S DRYWALL CONTRACTING, LLC,<br><br>Defendants. | Civil Action No. <u>6:24-CV-00785-AMN-MJK</u> |

---

### FIRST AMENDED COMPLAINT

---

### <u>Introduction</u>

1.     This action was initially filed in the Eastern District of Virginia, Richmond

Division. On June 18, 2024, this matter was transferred to this Court, *Vega et. al. v. Fox Building*

*Group Inc. et. al*. 3:23cv85-RCY (Dkt. 34). As a result of this transfer, Plaintiffs file this

Amended Complaint.

1

2.     This is a collective and class action suit for unpaid overtime under federal law and associated New York state labor laws. Plaintiffs each individually, on behalf of themselves, and on behalf of all others similarly situated (collectively "Plaintiffs"), respectfully move for judgment against Fox Building Group Inc. ("Fox"), Fenix Finishing LLC ("Fenix"), and Vega's Drywall Contracting LLC ("Vega's")("Defendants") for failing to pay their employees in accordance with the Fair Labor Standards Act and New York Labor Law.

3.     This complaint seeks relief for claims of unpaid overtime in violation of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq*., ("FLSA") arising out of work that Plaintiffs individually, and others similarly situated performed for the benefit and at the direction of the Defendants.

4.     Plaintiffs bring their FLSA claim as a collective action on behalf of themselves and those similarly situated (the "Putative Collective Members") against Defendants. Plaintiffs ask that if this case is not certified as a collective action that all individuals who opted-in to this case be permitted to proceed individually with their claims.

5.     Plaintiffs bring their NY state claims under various sections of the New York Labor Law ("NYLL"), as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and those similarly situated (the "Putative Class Members") against Defendants.

### Jurisdiction and Venue

6.     This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 in that the Plaintiffs raise a question of federal law.

7.     This Court has supplemental jurisdiction of all New York state claims pursuant to 28 U.S. Code § 1367 in that the New York claims are so related to the Federal claim and such

claims form part of the same case or controversy under Article III of the United States Constitution.

8.     Venue is proper for this Court pursuant to 28 U.S.C. § 1391 and Local Rule 2(b) because the underlying action that gives rise to this Complaint, or a substantial part thereof, occurred in this District.

9.     Defendants are subject to personal jurisdiction in the State of New York.

**Parties**

10.     Fox Building Group, Inc. is a Corporation based in Onondaga County, New York.

11.     Fenix Finishing LLC is a Limited Liability Corporation based in Petersburg, Virginia. The Registered Agent is Lineichka Wickline and the Registered Agent's Office is 1443 Weaver Ave., Petersburg VA 23803.

12.     Vega's Drywall Contracting LLC is a Limited Liability Company based in Spotsylvania County, Virginia. The Registered Agent is Juan Vega and the Registered Agent's Office is 1023 Rollingwood Dr., Fredericksburg, VA 22407.

13.     The Rule 23 Class Representatives are Darwin Jimenez Vega and Wilmer Orellana ("Class Representatives").

14.     All named Plaintiffs, except one, reside in Virginia.

15.     Each Plaintiffs' written consent to join this action is attached as **Exhibit 1**, and are as follows[1]:

    i.     Darwin Jimenez Vega (Darwin Jimenez),

    ii.     Wilmer Orellana,

---

[1] Plaintiffs originally opted-in to the suit filed in the Eastern District of Virginia, all written consents are attached hereto, and are intended to relate back to the original date each was filed.

iii.   David Aguilera Alvarez (David Aguilera),

iv.   Robinson Aguilera Rivas (Robinson Aguilera),

v.   Olvan Cruz Mejia,

vi.   Edwin Garcia Molina (Edwin Antonio Garcia Molina),

vii.   Jecson Gonzalez Machado (Jecson Fabricio Gonzalez Machado),

viii.   German Hernandez Castro,

ix.   Claudia Orellana Gomez (Claudia Orellana),

x.   Jonathan Castillo Lopez (Jonathan Javier Castillo Lopez),

xi.   Franklin Lainez Ordonez (Franklin Jose Lainez Ordonez),

xii.   Jose Lainez (Jose A. Lainez),

xiii.   the Estate of Melvin Orellana (Marina Orellana Gomez, Estate of Melvin Velasquez Orellana)[2],

xiv.   Junior Gonzalez, and

xv.   Luis Orellana Martinez (Luis Gustavo Orellana Martinez).

## **Factual Allegations**

16.     Plaintiffs and other similarly situated laborers were individually hired to work as laborers for Fox through Labor Brokers including Fenix and Vega's.

17.     On information and belief, Fox utilizes additional Labor Brokers to hire workers. Fenix, Vega's and other Labor Brokers are collectively referred to as the "Labor Brokers."

18.     All Plaintiffs were hired in Virginia but were made by the Labor Brokers to travel to work on Fox projects in upstate New York including medical offices, apartments and a

---

[2] Melvin Orellana resided in Virginia prior to his death. His mother, Marina Orellana is the administrator of his estate.

supermarket in Binghamton, Utica, Rochester, and multiple projects in Syracuse, New York.

19.     Defendant Fox is a subcontractor who contracts with general contractors on specific construction projects generally providing framing, drywall, and ceiling work.

20.     Fox then contracted with its Labor Brokers to provide laborers to perform work associated with the framing, drywall, and ceiling work for which Fox was paid by the general contractor. Plaintiffs were each individually a laborer who performed such work for the benefit of Fox and its Labor Brokers. Others similarly situated to Plaintiffs were laborers who performed the same or similar work for the benefit of the same parties.

21.     Plaintiffs and similarly situated laborers received job instructions and supervision from at least one of Fox's construction foremen at each Fox jobsite.

22.     No Plaintiff or similarly situated laborer performed any work for Fox without Fox providing a construction foreman on the jobsite to provide management and supervision of Plaintiff's work and the work of similarly situated laborers.

23.     Neither Plaintiffs nor others similarly situated were permitted to perform any work for Fox without Fox providing safety personnel on the jobsite.  Said safety personnel would supervise and ensure all safety requirements were being met to Fox's satisfaction.

24.     On information and belief and personal experience, on all Fox jobsites where Plaintiffs worked, Fox exercised the following control over Plaintiffs, and those similarly situated:

> a.  the authority to hire and fire;
>
> b.  determined the nature, location, work hours and extent of the construction work that Plaintiffs, and those similarly situated, were to perform each day;
>
> c.  the foremen managed and supervised the work of Plaintiffs and other similarly

situated laborers;

d.   Fox safety personnel oversaw the Plaintiffs and other similarly situated

laborers

e.   as a subcontractor, Fox had substantial control over the premises at which

Plaintiffs worked, and over the premises at which similarly situated laborers

worked;

f.   Plaintiffs, and the other similarly situated laborers, were required to record

their time on Fox's timesheets and submit to Fox for each day that they

worked on the construction site, so that Fox knew how many hours Plaintiffs,

and other similarly situated laborers, worked.

25.    Plaintiffs and other similarly situated laborers showed up to work with only

modest hand tools, as is common in the construction industry.

26.    Fox provided all heavy tools necessary for Plaintiffs and other similarly situated

laborers to do the construction work required, including ladders, scaffolding, scissor lifts,

durabond, blades, chopsaws, sledgehammers, and the like.

27.    Fox also provided all construction materials, like framing metal, drywall, screws,

lumber, and other construction materials, necessary for Plaintiffs and for other laborers to do the

construction work required.

28.    Plaintiffs received their paycheck from a Labor Broker.

29.    Plaintiffs received their straight time rates, between $15.00 and $30.00 per hour,

for all hours worked, regardless of the number of hours worked.

30.    The Plaintiffs' paychecks did not have any deductions taken out.

31.    Similarly situated laborers worked similar hours through their employment with

6

Defendants, totaling more than forty (40) hours per week.

32.    Despite working more than forty (40) hours per week, Plaintiffs did not get paid overtime at a time and a half rate for hours worked over forty (40).

33.    Despite working more than forty (40) hours per week, other laborers similarly situated to Plaintiffs did not get paid overtime at a time and a half rate for hours worked over forty (40).

34.    Throughout their employment many Plaintiffs worked in excess of seventeen (17) hours of overtime each week.

35.    For example, the week ending in May 21, 2022 Olvan Cruz received a paycheck from Fenix Finishing LLC for One Thousand Seven Hundred and Fifty Dollars ($1,750.00) for fifty-eight (58) hours of work. Olvan Cruz's regular rate of pay was $30.00 per hour. See **Exhibit 2**.

36.    Olvan Cruz's overtime rate would have been $45.00 per hour. If he had received overtime on all hours worked in excess of forty (40), he would have received a total of Two-Thousand and Ten Dollars ($2,010.00) for forty (40) hours of work at his rate of $30.00 per hour and eighteen (18) hours of work at his overtime rate of $45.00 per hour. Defendants thus failed to pay Olvan Cruz Two-Hundred and Sixty Dollars ($260.00) in overtime compensation for that week.

37.    For example, the week ending in May 21, 2022 German Hernandez Castro received a paycheck from Fenix Finishing LLC for One Thousand Four Hundred and Fifty Dollars ($1,450.00) for fifty-eight (58) hours of work. German Hernandez Castro's regular rate of pay was $25.00 per hour. See **Exhibit 3**.

38.    German Hernandez Castro's overtime rate would have been $37.50 per hour. If he

had received overtime on all hours worked in excess of forty (40), he would have received a total of One Thousand Six-Hundred and Seventy-Five Dollars ($1,675.00) for forty (40) hours of work at his rate of $25.00 per hour and eighteen (18) hours of work at his overtime rate of $37.50 per hour. Defendants thus failed to pay German Hernandez Castro Two-Hundred and Twenty-Five Dollars ($225.00) in overtime compensation for that week.

39.     Upon information and belief, Fox hired Plaintiffs, and hires similarly situated laborers, through Labor Brokers, with the intent to lower labor costs by denying such laborers basic rights including overtime wages guaranteed by the FLSA and NYLL.

40.     Fox, and its Labor Brokers knew Plaintiffs and similarly situated laborers worked overtime hours without getting paid an overtime premium.

41.     Plaintiffs were not employed in any bona fide executive, administrative, or professional capacity. Their fellow laborers were not employed in any bona fide executive, administrative, or professional capacity.

42.     Plaintiffs and their fellow laborers performed blue collar, manual work.

43.     Based on the nature of the job duties of Plaintiffs and the job duties of their fellow laborers, there is no FLSA exemption that applies to preclude them from being paid overtime at one and one-half times their regular rate of pay for all hours worked in excess of forty (40) per week.

44.     Fox and its Labor Brokers willfully violated the FLSA by knowingly failing to pay overtime.

45.     At all relevant times Fox and its Labor Brokers intended to deprive Plaintiffs and similarly situated laborers of the minimum wages and/or overtime pay to which they were entitled or acted with reckless disregard for the rights of Plaintiffs and similarly situated laborers.

8

46.    Fox and its Labor Brokers violation of the FLSA rights of laborers is believed to be continuing and ongoing.

47.    The economic reality of the relationship between the Defendants and Plaintiffs, and the Putative Class/Collective Members, is that of an employment relationship. Plaintiffs, and those similarly situated, are, and have been, misclassified as "independent contractors" by Defendants in an attempt to deprive them of overtime wages under the FLSA and NYLL. For example:

     a.  Defendants closely monitor and direct the day-to-day operation of Plaintiffs and the Putative Class/Collective Members. Plaintiffs and the Putative Class/Collective Members have no discretion over their duties, responsibilities and daily tasks.

     b.  Defendants retain the right to assign laborers to specific jobs and specific aspects of those jobs.

     c.  Defendants determine the rates charged to the General Contractor(s)

     d.  Defendants determine the amounts paid to Plaintiffs and the Putative Class/Collective Members.

     e.  Defendants control all aspects of the availability for profit.

     f.  The Labor Brokers separately rented trailers and cabins and provided housing to the workers while they were in New York.

     g.  The Defendants controlled the workers schedules including when they would travel to New York to work on the projects.

     h.  Defendants have massive oversight as to actual conduct of the work to be performed such as requiring safety equipment, specific tools and practices of

the trade.

## <u>Allegations Regarding the Labor Brokers</u>

48.    Fox is/was the employer or an employer of all current Plaintiffs and similarly situated laborers, and all Plaintiffs and similarly situated laborers are/were employees of Fox, under the FLSA and NYLL.

49.    Alternatively, the Labor Brokers are/were the employers or an employer of the Plaintiffs and similarly situated laborers paid through Labor Brokers and all Plaintiffs and similarly situated laborers are employees of the Labor Broker that paid them.

50.    Alternatively, Fox and its Labor Brokers are joint employers of Plaintiffs, and all similarly situated laborers under the FLSA and NYLL. As to any particular Plaintiff or similarly situated laborer, the joint employers are Fox, and the Labor Broker through which that Plaintiff or similarly situated laborer has been paid for working on Fox jobs.

51.    Labor Brokers are/were an employer of Plaintiffs and similarly situated laborers because they pay or paid Plaintiffs and similarly situated laborers for the work, they perform on the Fox jobs.

52.    Fox and its Labor Brokers are joint employers of Plaintiffs and similarly situated laborers because, among other reasons, Fox and its Labor Brokers jointly determine, share, or allocate the power to:

    a.  direct, control, or supervise the laborers;

    b.  hire or fire the laborers; and

    c.  modify the terms or conditions of the laborers' employment.

53.    In addition, Fox and its Labor Brokers are joint employers of Plaintiffs and similarly situated laborers because, among other reasons, Fox and its Labor Brokers jointly

determine, share, or allocate responsibility over functions ordinarily carried out by an employer, such as handling payroll; or providing the equipment, tools, or materials necessary to complete the work. For example, Fox provides heavy tools and equipment and all materials for laborers to complete the work and the Labor Brokers administer the payments to the individual laborers for their work.

54.    Fox and its Labor Brokers willfully violated the FLSA and NYLL by knowingly failing to pay overtime.

55.    At all relevant times Fox and its Labor Brokers intended to deprive each Plaintiffs individually and similarly situated laborers of the overtime pay to which they were entitled or acted with reckless disregard for the rights of each Plaintiff individually and similarly situated laborers.

56.    Fox and its Labor Brokers' violations of the FLSA and NYLL rights of the laborers is continuing and ongoing.

**Representative Action Allegations for FLSA Claims**

57.    Plaintiffs file this statutorily authorized FLSA collective action pursuant to 29 U.S.C. § 216(b) as Representative Plaintiffs.

58.    For purposes of the collective claims, Plaintiffs bring their FLSA claims on behalf of themselves and all past and present laborers of Fox who, within the three years prior to filing were hired through the Labor Brokers to provide drywall framing and finishing, ceiling, and similar construction labor for the benefit of Fox under the supervision of Fox's foremen, who worked more than forty (40) hours per week and were not paid an overtime premium for hours worked over forty (40).

59.    Plaintiffs are aware of other laborers who are similarly situated.

11

60.     Plaintiffs estimate that there may be one hundred or more similarly situated individuals due to high turnover of laborers who were deprived of overtime pay, and who continue to be so deprived, who were hired by Fox directly or through Labor Brokers

61.     Plaintiffs believe and thereon allege that Labor Brokers have been used by Fox within the past three years, and continuing, as part of a common plan or scheme to avoid paying overtime wages on construction projects.

62.     Upon information and belief, these laborers were paid, and continue to be paid, under a similar pay scheme which deprived them of overtime pay.

63.     Upon information and belief, these laborers perform, and have performed, work which entitles them to payment of overtime compensation that they have not received.

64.     Upon information and belief, Fox, and the Labor Brokers compensated, and continue to compensate, those similarly situated to Plaintiffs on a uniform compensation basis.

65.     Fox's policy of using Labor Brokers to avoid paying overtime amounted to a willful or reckless disregard of its employees' rights under the FLSA.

66.     Labor Brokers' policy of not paying overtime amounted to a willful or reckless disregard of the employees' rights under the FLSA.

67.     Neither Fox nor the Labor Brokers had a good faith basis to believe that these employees were not entitled to minimum wages and overtime under the FLSA.

68.     Plaintiffs assert that Defendants' willful disregard of the overtime laws described herein entitles Plaintiffs individually and similarly situated employees to the application of the three (3) year limitations period.

69.     Plaintiffs' job duties, and the job duties of those similarly situated to Plaintiffs, are not exempt from the coverage of the FLSA.

70.     At all relevant times, all Plaintiffs and other similarly situated employees have been entitled to the rights, protections, and benefits provided under the FLSA.

**Class Action Allegations**

**A.     Class Definition**

71.     The Rule 23 Class Representatives seek to maintain claims pursuant to NYLL individually and on behalf of a class of current and former laborers as follows:

>    a.  Former and current laborers of Fox and a Labor Broker during the period going back six years from the filing of this action who suffered or were permitted to work over 40 hours in a workweek and not paid the statutory full overtime for all hours over 40 hours.

72.     On information and belief, Plaintiffs and all others similarly situated were made to assent to the same pay scheme, and the same work requirements.

**B.     Efficiency of Class Prosecution of Common Claims**

73.     Certification of current and former laborers is the most efficient and economical means of resolving the questions of law and fact which are common to the claims of the Plaintiffs and the Putative Class Members. Conversely, proceeding on an individual basis will require the filing of potentially scores of duplicative individual suits which will waste judicial time and resources and create the risk of inconsistent or varying adjudications of common issues.

**C.     Numerosity and Impracticality of Joinder**

74.     On information and belief, the class which the Class Representatives seek to represent is one-hundred or potentially higher due to high turnover, individuals such that joinder is impracticable.

**D.    Common Questions of Law and Fact**

75.    Defendants' use of laborers and the propriety of their pay scheme(s) and classification of laborers presents common issues of fact in this matter. Moreover, the challenged pay and classification practices apply uniformly and present identical questions of law and fact with respect to the Class Representatives and those whom they seek to represent.

**E.    Typicality of Claims and Relief Sought**

76.    The claims of the Class Representatives are typical of those of the class members as a whole in that their claims are based on the same contract and business and compensation practices. The relief sought by the Class Representatives for unpaid overtime wages and statutory damages for violations of NYLL is also typical of the relief which is sought on behalf of the class.

**F.    Adequacy of Representation**

77.    The Class Representatives are adequate class representatives for the class. Their interests are co-extensive with those of the members of the proposed class they seek to represent. Plaintiffs have an intimate knowledge of their duties and the pay practices. They are committed to being representatives of the class and have retained counsel experienced in prosecuting class action employment cases to protect the interests of the class.

**G.    Rule 23(B)(3) Requirements**

78.    Common questions of law and fact predominate over any questions affecting only individual members because the basis of the claims herein is the common application of the nonpayment of full overtime wages, and compliance with NYLL.

79.    A class action is superior to other available methods for adjudicating the controversy because other methods would involve the filing of numerous individual claims that

are based on the same centralized scheduling and compensation facts and the same legal issues regarding same. Numerous individual cases similar to Plaintiffs' would clog the Court's docket and waste judicial time and resources. Moreover, multiple individual cases based on the same legal issue(s) could lead to inconsistent or varying adjudications of the same issue(s).

80.    The Putative Class Members do not have a substantial interest in individually controlling a separate action because any such claim would be based on the same centralized contractual compensation practices and their recovery in either an individual or class action will be based on the amount of wages, overtime compensation, or other damages that each Plaintiff has been denied by Defendants.

81.    The Class Representatives and counsel are not aware of any other litigation concerning the controversy that has already begun by proposed class members within the State of New York.

82.    It is desirable to concentrate the claims in this forum because the employment practices complained of with respect to the Class Representatives occurred in New York.

83.    Class Representatives and counsel do not foresee any substantial difficulties in managing a class action and counsel is experienced in managing class action litigation in this forum.

**COUNT I**
**Violation of the FLSA: Failure to Pay Overtime Compensation**
**(Collective Action)**

84.    This count arises from Fox and its Labor Brokers' violation of the FLSA by failing to pay the correct overtime to Plaintiffs and the Putative Collective Members when they worked over forty (40) hours in individual workweeks.

85.    Plaintiffs and Putative Collective Members were not exempt from the overtime

provisions of the FLSA.

86.    Plaintiffs and the Putative Collective Members were directed by Fox and its Labor Brokers to work, and did work, over forty (40) hours in one or more individual workweeks.

87.    Fox and its Labor Brokers did not pay Plaintiffs, and the Putative Collective Members overtime compensation.

88.    Fox and its Labor Brokers violated the FLSA by failing to overtime to Plaintiffs and the Putative Collective Members, at one-and-one-half times their regular rate of pay when they worked over forty (40) hours in one or more individual workweeks.

89.    Fox and its Labor Brokers' failure to pay Plaintiffs and the Putative Collective Members one-and-one-half times their regular rate for all time worked over forty (40) hours in a workweek was willful.

## COUNT II
### Failure to Comply with New York Labor Law-Overtime Violations
### (Class Action)

90.    At all times relevant to this action, Plaintiffs and Putative Class Members were employed by Fox and a Labor Broker within the meaning of NYLL.

91.    By the course of conduct set forth above, Fox and its Labor Brokers have violated N.Y. LAB. LAW § 191 *et seq*., including N.Y. LAB. LAW §§ 191, 198, and N.Y. COMP. CODES R. & REGS. § 142-2.2.

92.    The NYLL requires employers, such as Defendants, to pay overtime compensation to all non-exempt employees "at a wage rate of one and one-half times the employee's regular rate in the manner and methods provided in" the FLSA. N.Y. COMP. CODES R. & REGS. § 142-2.2.

16

93.     Plaintiffs and the putative class were non-exempt employees that meet the definition of "manual worker" as defined in N.Y. LAB. LAW § 190.

94.     Plaintiffs and the putative class are entitled to be paid proper overtime compensation for all hours worked pursuant to N.Y. COMP. CODES R. & REGS. § 142-2. 2.

95.     During the relevant statutory period, Plaintiffs and the putative class worked in excess of forty (40) hours per week for Fox and its Labor Brokers.

96.     During the relevant statutory period, Fox and its Labor Brokers failed and refused to pay the Plaintiffs and the putative class proper overtime compensation for overtime hours worked.

97.     As a result of Fox and its Labor Brokers' failure pay overtime rates paid to Plaintiffs and similarly situated employees, Fox and its Labor Brokers violated the NYLL.

98.     As a direct and proximate cause of Fox and its Labor Brokers' acts, including Fox and its Labor Brokers' failure to act in good faith, Defendants willfully violated the NYLL, and Plaintiffs and Putative Class Members have suffered damages pursuant to N.Y. LAB. LAW §§ 191, 198, and N.Y. COMP. CODES R. & REGS. § 142-2.2.

99.     As a direct and proximate result of Fox and its Labor Brokers' unlawful conduct, as set forth herein, Plaintiffs and the putative class have sustained and seek to recover damages, including unpaid overtime compensation, liquidated damages equal to one hundred percent of the total amount of wages found to be due, pre and post judgment interest, and attorneys' fees and costs.

## COUNT III
### Failure to Comply with New York Labor Law-Untimely Payment of Wages
### (Class Action)

100.   The wage provisions of Article 6 of the NYLL, specifically N.Y. LAB. LAW §

191 and its supporting regulations, apply to Fox and its Labor Brokers and protect Plaintiffs and

class members.

101.   Fox and its Labor Brokers have repeatedly failed to pay Named Plaintiffs and

Putative Class Members wages, including overtime, to which they are entitled under the NYLL

in a timely manner consistent with N.Y. LAB. LAW § 191.

102.   Through their knowing or intentional failure to pay Plaintiffs and Putative Class

Members overtime wages in a timely manner, Fox and its Labor Brokers have willfully violated

N.Y. LAB. LAW § 191 and the supporting New York State Department of Labor Regulations.

103.   Due to Fox and its Labor Brokers' violations of the NYLL, Plaintiffs and Putative

Class Members are entitled to recover from Defendants the amount of the unpaid wages and an

additional amount as liquidated damages for all wages not paid in a timely manner, as provided

for by N.Y. LAB. LAW § 198, as well as reasonable attorneys' fees, costs, and pre-judgment and

post-judgment interest.

### Relief Requested

Wherefore, Plaintiffs request the following Relief against Defendants, individually,

collectively, jointly, and severally:

a.   An order conditionally certifying a collective action under the FLSA and

approving a notice to be sent to all such members, notifying them of this representational lawsuit

and their ability to file a written consent to join in this action without threat or fear of reprisal;

b.   Certification of the Class pursuant to Rule 23 of the Federal Rules of Civil

Procedure for violations of NYLL;

      c.      Judgment against all Defendants for violations of the overtime provisions of the FLSA and NYLL;

      d.      All unpaid wages and overtime damages due to Plaintiffs and Members of the FLSA Collective and the state law class action claims;

      e.      Judgment that Defendants' violations of overtime laws were willful;

      f.      Liquidated damages equal to the unpaid overtime and/or unpaid wage compensation due under FLSA and NYLL;

      g.      All other damages available under NYLL for all claims where such relief is available;

      h.      Pre-judgment and post-judgment interest;

      i.      Reasonable attorneys' fees and costs including expert fees expended in the prosecution of this case and the investigation that preceded it;

      j.      Leave to amend to bring additional claims and/or parties, including but not limited to allowing all named and opt-in Plaintiffs to proceed with their individual claims should this case not proceed as a collective or class action for any reason; and

      k.      Any and all further relief permissible by law.

## **Demand for Jury Trial**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs hereby request a TRIAL BY JURY for all claims and issues so triable.

                            Respectfully submitted,
                            DARWIN JIMENEZ VEGA, WILMER
                            ORELLANA, DAVID AGUILERA ALVAREZ,
                            ROBINSON AGUILERA RIVAS, OLVAN CRUZ
                            MEJIA, EDWIN GARCIA MOLINA, JECSON
                            GONZALEZ MACHADO, GERMAN

HERNANDEZ CASTRO, CLAUDIA ORELLANA
GOMEZ, JONATHAN CASTILLO LOPEZ,
FRANKLIN LAINEZ ORDONEZ, THE ESTATE
OF MELVIN ORELLANA, JOSE LAINEZ,
JUNIOR GONZALEZ, and LUIS ORELLANA
MARTINEZ on behalf of themselves and others
similarly situated

By: _/s/ Craig Juraj Curwood_
Craig Juraj Curwood (VSB No. 43975)*
Zev H. Antell (VSB No. 74634)*
Samantha R. Galina (VSB No. 96981)*
*Admitted Pro Hac Vice*
Butler Curwood, PLC
140 Virginia Street, Suite 302
Richmond, VA 23219
Telephone: (804) 648-4848
Fax: (804) 237-0413
Email: craig@butlercurwood.com
          zev@butlercurwood.com
          samantha@butlercurwood.com

J. Nelson Thomas (Bar No. 509525)
Jonathan W. Ferris (Bar No. 519000)
Thomas & Soloman PLLC
693 East Avenue, Rochester, NY 14607
Telephone: (585) 272-0540
Fax: (585) 272-0574
Email: jwferris@theemploymentattorneys.com
          nthomas@theemploymentattorneys.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 22nd day of August 2024, I electronically filed the foregoing document with the Clerk of Court using the Court's CM/ECF system to serve all attorneys of record, and I also mailed the pleadings to the following:

Fenix Finishing LLC
C/O Lineichka Wickline
1443 Weaver Avenue
Petersburg VA 23803

Vega's Drywall Contracting LLC
C/O Juan Vega
1023 Rollingwood Drive
Fredericksburg, VA 22407

_/s/    Craig Juraj Curwood_____
Craig Juraj Curwood (VSB No. 43975)*
*Admitted Pro Hac Vice*